## Isham Daniel *v.* Jacoway *et al.* Board of Police of Neshoba county.

Where a tract of land was granted to the Board of County Police " for the use and benefit of the county of Neshoba, for a county site for a court house, &c." and the Board of Police entered upon the land, built a court house, laid off town lots and sold them, but subsequently removed the county site and court house from the said tract of land; held, that the land reverted to the grantor.

In the year 1836, Isham Daniel executed the following deed : "This indenture, made the third day of June, one thousand eight hundred and thirty-six, between Isham Daniel, of the county of Neshoba, and state of Mississippi, of the one part, and Benjamin J. Jackoway, James Wilson, Temple Tullas, William Young, and Aaron Parker, members of the Board of Police of the county aforesaid, of the other part, witnesseth, That the said Isham Daniel, for and in consideration of the sum of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, donated, conveyed and confirmed, and by these presents doth grant, bargain, sell, donate, convey and confirm unto the said parties of the second part, and to their successors in office forever, a certain tract or parcel of land, lying and being in the county of Neshoba, to wit, (here describing the land,) containing eighty acres more or less, for the use and benefit of the county of Neshoba aforesaid, for a county site for a court house, &c. To have and to hold the same to the party of the second part and their successors in office forever," &c. Isham Daniel files this bill for a reconveyance of the land to himself, alledging that the trust for which the same was conveyed has been defeated by the trustee's own act.

The following are the facts agreed upon by counsel, and on which the case was submitted to the chancellor.

" It is agreed that the Indenture set out in the bill was made by the complainant to the parties therein for the purposes therein ex-

pressed, and for the consideration named. It is agreed, that the consideration of one dollar is nominal, and that it was not in fact ever paid. It is agreed, that complainant delivered possession under said deed to defendants. It is agreed, that defendants took possession of the land named in said deed, and that they did build a court house, and establish a seat of justice on said land, and that said court house and seat of justice remained there for a limited time, that lots were laid off and sold, and a town called Camden established; that since that time the Board of Police for the county of Neshoba removed the seat of justice three miles off to Philadelphia, the said seat of justice and court house for said Neshoba county having been kept at Camden six or eight months. It is agreed, that the only understanding or agreement between the parties whatever in relation to the permanency of said court house and seat of justice, or in relation to the reversion of said land to the grantor, is contained in the deed aforesaid, upon the construction of which, and the facts hereby agreed, the rights of these parties rest. It is agreed, that said tract of land in said deed mentioned, was situated in the midst of a considerable tract of land of complainant. It is also agreed, that complainant has sold this tract of land since the establishment of said seat of justice at Camden, and while it remained there, to one ———, and that said ——— has run off, and has not yet paid for the same, and is insolvent. It is also agreed, that the lots so sold in Camden have been transferred by the purchasers back to said Board of Police, who gave to the purchasers in lieu thereof lots in Philadelphia aforesaid.

HAYS, YERGER, and FORESTER,
*Counsel for defendant.*
DANL. MAYES, *for complainant.*

DANIEL MAYES for complainant.

The authorities referred to by the defendant are not considered by the plaintiff's counsel applicable to the case. They all merely treat of the circumstances under which estates tail become fee simple, or estates upon condition subsequent become fee simple absolute, instead of estates on condition. Their only purpose is to define and ascertain what *quantity* of estate the grantee has. The case in 10th Peters, like the others, only presents a question,

Isham Daniel *v.* Jackaway *et al.*

did the title vest *at law* upon performing a condition subsequent? which is indeed no question at all, as I humbly conceive. There was no question whether the sovereign making the grant might not have resumed it; for the title having vested, by performance of the condition, the sovereign could only have resumed the thing granted by the appropriate proceeding by *scire facias* to divest the estate; and the sovereign, Spain, having acquiesced, that question could not arise after the treaty of cession between the United States and Spain. Had it been however a question open and made in the case, I concede that the title vested absolutely upon performing the condition, and that it could not have been resumed according to the principles of the common law. The condition of the grant was expressed—the whole condition performed; the grant was to Coppinger, not in trust, but in his own right, to vest upon a valuable consideration to pass and which did pass from him.

Very different is the present case ; and being so, it is to be determined upon different principles.

Here the deed, by its delivery, passed an estate in fee to the grantees, to hold, not for themselves or in their own right, but as public functionaries in trust for a public purpose, to wit: "for the use and benefit of the county of Neshoba aforesaid, *for a county site for a court house*," &c. The question then here is only the plain and simple question, whether property conveyed in trust for a public purpose shall revert to the grantor when that purpose is at an end, or the object of the grant has failed. To cite authority on such an A, B, C question in the law, seems to me a work of supererogation. It is in principle the case of a corporation dissolved. There the land reverts to the grantor. Why? Because the purpose of the grant has failed. Or of a gift to charitable uses, where the charity fails : the reason being the same, the law is the same.

Even if the doctrine before adverted to was not conclusive of the case, the leading and indeed the only inducement to the conveyance by the complainant has failed by the act of the grantees, and it would be against the plainest dictates of sound morality that they should hold the land.

"The application to a court of equity for a rescission or specific

execution of a contract, is not, strictly speaking, a matter of abso-lute right, upon which the court is bound to pass a final decree. But it is a matter of sound discretion to be exercised by the court, either in granting or refusing the relief prayed, according to its own notion of what is reasonable and proper, *under all the cir-cumstances of the particular case.*" 2 Story's Equity, 4, and authorities there cited.

If the grantees accepted the deed, intending a removal of the seat of justice, it was a fraud that should vacate the contract. If they supposed it a permanent location, and the public interest required a removal, it was a case of giving and receiving a con-veyance under a mistake, which should produce a rescission. See 2 Kent's Com. 469, 480, 487.

It was conveyed to the grantees and their successors, in trust "for the use and benefit of the county of Neshoba," not generally, but for a specific purpose, viz: "for a county site for a court-house, &c." He who gives may declare the law or fix the terms of his gift, and it cannot be applied otherwise. 2 Fonblanque, 210, marginal paging, Philad. ed. of 1831, in note; Dartmouth College *v.* Woodward, 4 Wheat. 537; Roper on Legacies, title Charity.

WILLIAM YERGER for defendants.

The facts in this case are agreed, by which it appears that a gift was made of a piece of ground, for the purpose of building a court house and laying off a town. This was done, and the town was subsequently removed to another place. It is contended that the land reverts to the donor.

It is contended, for the defendants, that it does not revert, be-cause the grant was made on condition that a court house should be built and a town laid off; which was a condition precedent to the vesting of the right, the rule in which case is, that as soon as the condition is performed the right becomes absolute and un-conditional, and completely under the control of the donee. 1 Cruise's Dig. 75, 76; 2 ib. 30; Plowden's Rep. 235, 241; 7 Coke's Rep. 346; 10 Peters 309.

The case in 10 Peters 309 is precisely similar to the present. The Spanish governor of Florida granted to the defendant a quan-tity of land and the timber on it, for the building of a mill, upon

the condition that until the mill was built the grant should not take effect. The mill was built and kept in operation a short time, but has since been allowed to decay, and was not kept in operation longer than a year or so. Held by the court—that the title in fee was complete when the mill was built. The counsel for the defendants believe that the foregoing authorities fully establish the position that when an estate is granted upon condition, it becomes absolute in the grantee the moment the condition is performed.

THE CHANCELLOR.

The complainant conveyed a tract of land in the county of Neshoba to the defendants, as a board of county police, as the deed expresses it, "for the use and benefit of the county of Neshoba aforesaid, for a county site, &c." The deed was duly executed and delivered, and the police court proceeded to lay out town lots and build a court house. Shortly afterwards the board of police removed the seat of justice to another place, some three or four miles off. Upon this state of things the complainant files his bill against the defendants for a reconveyance, upon the ground of the failure of the condition and purposes for which it was made. The defendants resist the application, and insist that the building of a court house and location of a county town on the land was a *condition precedent,* and having been performed, the title vested absolutely and *unconditionally* in fee simple.

From the construction which I place upon the deed as recited in the bill, the locating the county site was most clearly a condition subsequent. The granting words of the deed are in *presenti,* and the title passed upon the execution and delivery of the deed, subject to the purposes expressed on the face of the deed. A condition *precedent* is one which must take place or be performed before the estate can *vest. Subsequent conditions* are those which operate upon estates already created and vested, and which render them liable to be defeated. Here there was not a *substantial* compliance with the subsequent condition. The defendants took the land, not absolutely, but in trust, for the use and benefit of the county of Neshoba, for a county site, court house, &c. But the county for whose use it was conveyed has refused to appro-

priate the land to the purposes expressed in the deed. Can the defendants, then, set up an absolute estate in themselves, when the *trust* upon which the land was conveyed has wholly failed, and this, too, by their own act? Or will the title, like a conveyance in trust—void under the statute of mortmain—result back to the grantor, or his heirs? They certainly have no right to hold, except upon the very terms expressed in the trust. Are not the principles of this case altogether analagous to those which obtain in a case where a voluntary grant has been made to a corporation, and where, upon a dissolution of the corporation, the title to the thing granted would revert back to the grantor?

I consider the construction of the deed to be, that the defendants were to hold the land for the use of the county so long as the county used it for a county site and court house. It was a continuing and subsisting trust, not put an end to by building a court house. If I am right in this construction, it distinguishes it at once from the case in 10th Peters. The grant in that case, by its very terms was to take effect upon the performance of a single condition, to wit: the completion of a mill. Suppose the terms of the grant in that case had have been to be held and used as a mill site, the rule would doubtless have been different, as in the case of 5th Hammond, Ohio Rep. 389, where it was held that a conveyance on condition that the grantee should keep a saw and grist mill on the land. Doing business is a valid condition, and a failure to perform forfeits the condition. But I find the question in this case has been directly settled in the supreme court of Louisiana, (18 Martin's Rep. 221,) where it was held, that if land be given on the condition that the public buildings of the parish be erected thereon, the title would revert to the *donor* upon the seat of justice of the parish being removed under the sanction of an act of the Legislature, passed subsequent to the grant. *Police Jury vs. Reeves.* The principles of this case are decisive of the one now under consideration.

A decree must be made for the complainant, according to the prayer of the bill, and at defendant's costs.